## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES CONROY** | : | |
| | : | **CIVIL ACTION NO. 09-cv-01215** |
| | : | |
| **v.** | : | |
| | : | |
| **JBJ LIMOUSINE, INC.** | : | |
| **t/a JBJ LIMOUSINE and** | : | |
| **JBJ LIMOUSINE AND BUS, INC.** | : | |
| | : | |
| | : | |

# O R D E R

AND NOW, this _____ day of _____, 2009, upon consideration of defendants' motion and plaintiff's response thereto, it is hereby ORDERED and DECREED that defendants' motion for summary judgment is DENIED except as to the application of punitive damages which may not be recovered by the plaintiff as against either of the defendants.

_____
                                                              J.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES CONROY** | : | **CIVIL ACTION NO. 09-cv-01215** |
| | : | |
| **v.** | : | |
| | : | |
| **JBJ LIMOUSINE, INC.** | : | |
| **t/a JBJ LIMOUSINE and** | : | |
| **JBJ LIMOUSINE AND BUS, INC.** | : | |
| | : | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Charles Conroy, through his attorney James N. Gross, Esquire responds to defendants' Motion for Summary Judgment as follows:

1.     Denied.  The plaintiff was injured as a result of an <u>assault</u> not a "physical altercation."

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Denied.  As will be brought out in the attendant brief in support of this response plaintiff avers that he has made out a prima facie case of negligence against the defendants.

7.     Denied.  As will be brought out in the attendant brief in support of this response plaintiff avers that he has made out a prima facie case of negligence against the defendants.

8.      In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

9.      In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

10.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

11.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

12.     Denied.  Plaintiff avers that the defendants did have a duty of care to protect individuals such as the plaintiff from potential harm.

13.     Denied.  The plaintiff has proffered sufficient evidence in proving that a duty was owed, through both of its expert reports, that the duty was breached.

14.     Admitted.  It is admitted that the defendants did not serve any alcoholic beverages to its passengers which is consistent with the averments in the complaint.

15.     Admitted.

16.     Admitted.

17.     Denied.  The testimony of the plaintiff reveals that the people that were on the bus were the same people who assaulted him.

18.     Denied.  The plaintiff has proffered sufficient evidence in proving that a duty was owed and that the duty was breached by his deposition testimony and the expert report of Elizabeth Trendowski.

19.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

20.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

21.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

22.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

23.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

24.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

25.     Admitted.

26.     Denied.  The testimony of the plaintiff reveals that the group of assailants who assaulted him and caused his injuries came directly from the bus.

27.     Denied.  It is averred that plaintiff has offered a prima facie case that the inactions of the defendants were both a factual and proximate cause of the injuries sustained.

28.     Denied.  Plaintiff avers that the actions of his assailants, who were passengers on the bus, were foreseeable within the parameters of the "reasonable person" standard under the instant circumstances.

29.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

30.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

31.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

32.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the

cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

33.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response. Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

34.     Denied. Plaintiff avers that the individuals who assaulted him came directly from the bus and that the non-supervision of the bus under these circumstances could be harmful to individuals or property.

35.     Denied. The assailants in question were passengers on the bus possessed by the defendants who maintained responsibility for supervision of the occupants at all times in the instant circumstance. Plaintiff avers that it was foreseeable that intoxicated patrons who were in the defendants' bus and left unsupervised for an extended period of time could do harm upon people or property.

36.     Denied. In light of the defendants' actions or non-actions serving as a substantial factor in the harm that was eventually perpetrated upon the plaintiff, such actions or omissions fulfill the element of proximate cause.

37.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response. Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

38.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

39.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

40.     Denied.  Plaintiff has produced expert reports containing findings within the purview of these experts' fields as specified in their reports and curriculum vitae.

41.     Admitted in part and denied in part.  Ms. Trendowski has been identified as an expert within the context of not just dram shop litigation but within the context of the distribution of alcohol within the hospitality industry (of which the defendants would be included) and related safety measures.

42.     Admitted, plaintiff recognizes that this is not a dram shop case.

43.     Denied.  Since expert Trendowski is very much qualified to offer opinions within the distribution presence or dispensing of alcohol related safety measures in the hospitality industry, a case such as the instant one is well within her area or areas of expertise.

44.     Admitted.

45. Denied. As her report details, Ms. Trendowski's opinions are based on the facts gleaned from the discovery material, inclusive of the depositions of several individuals. The assertion that the passengers on the defendants' vehicle were intoxicated or appeared to be intoxicated is drawn from the lay testimony and elements comprising the discovery in this case.

46. Admitted.

47. Denied. As per the curriculum vitae of Mr. Watt, he has been involved in the manufacturing and design of buses. Being so closely involved in such processes, the safety measures and protocol of bus drivers is germane to his area of expertise.

48. Denied. The opinion of the expert as to the actions of the bus driver offered by Mr. Watt is drawn from the material comprising the discovery in this case.

49. Denied. It is plaintiff's position that both opinions of the experts are proper for consideration in deciding this motion and beyond.

50. Denied. Plaintiff avers that the doctrine of the assumption of risk has no application to the instant set of facts.

51. Admitted.

52. Admitted.

53. Denied. The plaintiff did not offer any testimony in support of the defendants' assertion that he "provoked an argument."

54. Denied. The defendants' use of the words "physical altercation" are inaccurate and misguided. An assault on the plaintiff was the event which occurred from which the plaintiff sustained significant facial injuries.

55.    Denied.  It is plaintiff's position that the assault was caused, not by any voluntary engagement on the plaintiff's behalf, but the non-actions or omissions of the defendants in the supervision of the passengers under the circumstances existing at that time.

56.    Admitted, in light of the plaintiff's condition after the assault and in light of the police intervention which followed.

57.    Denied.  At no time did the plaintiff assume the risk of his conduct and the facts borne out in discovery fail to support the application of this doctrine.

58.    Admitted.

59.    In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

60.    In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

61.    In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

62.     In the instant paragraph defendants have offered only conclusory assertions which plaintiff avers are insufficient in requiring the plaintiff to offer a response.  Whether the conclusory assertions, which constitute the defendants' interpretations of the holdings in the cases cited, have application in the instant case is for the court to decide within the context of the arguments presented through the parties' respective briefs.

63.     Admitted.

64.     Admitted.

WHEREFORE, plaintiff requests that defendants' motion for summary judgment be denied except as to the application of punitive damages.

Respectfully submitted.

By: _____

James N. Gross, Esquire
Attorney I.D. # 40715
Attorney for Plaintiff
1616 Walnut Street, Suite 1110
Philadelphia, PA 19103
(215) 670-9926

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES CONROY** | : | |
| | : | **CIVIL ACTION NO. 09-cv-01215** |
| | : | |
| v. | : | |
| | : | |
| **JBJ LIMOUSINE, INC.** | : | |
| **t/a JBJ LIMOUSINE and** | : | |
| **JBJ LIMOUSINE AND BUS, INC.** | : | |
| | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE**

**I.      PROCEDURAL HISTORY**

The instant matter was initiated in the Court of Common Pleas of Philadelphia County by a Writ of Summons on 11/13/08. The original defendant named in the initial Writ of Summons was identified as JBJ Limousine, Inc. t/a JBJ Limousine. On 11/21/08 a Writ to Joint Additional Defendant was filed in state court naming JBJ Limousine and Bus, Inc. as an additional defendant. Both defendants were personally served at their respective addresses in New Jersey and the requisite affidavits of service were filed in state court on 11/21/08 and 12/4/08. A case management order and notice of trial pool assignment dated 2/18/09 was issued to the parties by the Court of Common Pleas of Philadelphia County. Thereafter, on 2/27/09 plaintiff filed its complaint against the defendants in state court. Service of the complaint against both defendants was effectuated by United States First Class Mail as permitted by state rules. Affidavits of service as to the defendants each being served with a copy of the complaint were filed in state court on 3/6/09. By notice of removal dated 3/19/09, the matter was thereafter moved to the United States District Court for the Eastern District of Pennsylvania. On 4/9/09 the defendants

answered the plaintiff's complaint and raised affirmative defenses.  The matter having been assigned to the Honorable Bruce W. Kauffman on 4/13/09, an order was thereafter entered specifying that a Joint Rule 16 Memorandum would be due on 5/15/09.  On that date the Joint Rule 16 Memorandum was filed electronically by counsel who were thereafter notified of the availability of a Magistrate Judge to exercise jurisdiction.  By consent of counsel of 5/20/09 it was agreed that jurisdiction could be exercised by a U.S. Magistrate Judge.  After consultation with U.S. Magistrate Judge Jacob P. Hart an initial scheduling order was issued on 6/3/09.  On 9/24/09 a revised scheduling order, at the request of counsel, was issued providing for defendants submission of a Motion for Summary Judgment by 11/2/09 and plaintiff's response by 11/16/09. It is in response to defendants' motion that plaintiff now offers the instant writing.

## II.    **FACTS FROM PLAINTIFF'S PERSPECTIVE**

On the night of 11/26/06 plaintiff Charles Conroy and two of his friends, Nick Sloms and Nick Loberto were in the Old City section of Philadelphia.  They arrived in Old City approximately 11:00 p.m. to go to certain bars in the area.  Conroy testified at his deposition that it was no more than three bars all of which they had frequented before that evening.  After the bars had closed at approximately 2:00 a.m., Conroy recalled stopping at Soho Pizza between 2:00 and 2:30 a.m.  After leaving Soho Pizza, the plaintiff and his two friends crossed from the south side of Market Street to the north side and proceeded to walk west on the north side of Market between 2nd and 3rd streets.  While walking, Conroy saw a bus that had broken down and the door(s) were wide open, the disabled bus was on Conroy's left as he was walking west on Market Street.  Seeing that the door was open, Conroy looked in and saw no driver.  It was at that point that he decided to walk onto the bus.  Not only did Conroy testify that he did not see a driver he saw no one standing outside the bus.  Conroy's reason for walking on the bus was because "I was

curious and I wanted to see if they needed help." (Page 46 lines 13-14 of Conroy deposition)

As soon as Conroy walked onto the bus and climbed the stairs he saw approximately 12 to 15

people congregated in the rear of the bus. At the time that he entered into the bus, Conroy

testified that he was not drunk and felt completely sober. (Page 48 lines 13-14 of Conroy

deposition) After some basic salutary remarks from Conroy, he was told very aggressively to get

the "fuck out of the bus." (Page 50 line 4 of Conroy deposition) In response to the comment

from the one male, Conroy turned around and walked down the stairs but before leaving the bus

Conroy "knocked over one of the cups that had just a little tiny bit of beer in it and then walked

out." (Pages 51 and 52 lines 13-19 of Conroy deposition) Immediately after leaving the bus

approximately six or seven males came out talking aggressively to Conroy's friend Nick Loberto.

The six or seven males from the bus surrounded Loberto (and Conroy). Loberto was hit and fell

right to the ground after which Conroy started running west on Market Street. As Conroy was

running the males surrounded him striking him in the face with their fists. The assault resulted in

Conroy sustaining severe facial injuries. The Philadelphia Police were called to the scene by a

911 call from Conroy's friends. The Philadelphia Police questioned certain of the parties and an

ambulance was called to administer to Charles Conroy who was then transported from the scene.

William Ervin was the bus driver that night for the bus owned by the defendants and

rented out for the purpose of a 21st birthday celebration. Mr. Ervin, at his deposition, stated that

the patrons on the bus that night did not bring alcohol onto the bus. Nor did the patrons pick up

alcohol on the way and Ervin testified, there was no drinking on the bus. As stated by Ervin

"they had no alcohol. There were no beer bottles." (Page 26 line 3 of Ervin deposition) Ervin

recalled the bus breaking down in the vicinity of 3rd and Market Streets while claiming that he

stayed with the bus at all times.

In contrast to Conroy's statements that he never saw a bus driver, Ervin testified as follows: (Page 30, lines 1-7, Page 31 lines 8-14; 22-2)

Q.   Did you ever leave the bus at any point?

A.   No.

Q.   You never left the bus?

A.   I didn't leave the vicinity.  I stood outside...I was outside the front door.

Q.   How far away?

A.   As close as I am to you.

Q.   Would it be fair to say that is about 4 feet or 3 feet?  About 3 feet away?

A.   Yes.

Q.   That's the furthest you got from the bus?

A.   That's the furthest I got from the bus.

Q.   You were, again, 3 feet from the bus?  Were you by the front door?

A.   Yes.

Q.   Is there only one entrance to the bus?

A.   Yes.

As to Ervin's recollection as what transpired that evening, the following portions of his deposition testimony are instructive: (Pages 31, 32 lines 9-14; 21-24)

Q.   Tell specifically what you saw.

A.   We were broke down.  There were a couple of guys who were coming down 3rd Street. They started mouthing off.  I was outside and I had four guys with me that were smoking cigarettes.  Everybody else was inside the bus.

A.  The only thing I saw was those guys mouthing off that was it.  As far as the fight goes I didn't see anything.  I didn't see who hit what or who threw the first punch or whatever.  Further on page 33 lines 5-22, Ervin testifies as follows:

Q.  Okay.  The four guys that you mentioned who were having a cigarette that were on your bus, they were outside having a cigarette...

A.  Yes.

Q.  Then these other two people were coming down the street?

A.  Yes.

Q.  These two guys or one of the two guys began mouthing off to the group of four?

A.  Yes.

Q.  You saw all of this?  You were within just a few feet of this whole event?

A.  Yes.  That's the only part I saw was the mouthing off part.

Q.  That's it.

A.  That was it.

Q.  You didn't see a fight?

A.  No.

The following portions of Ervin's testimony are also instructive:  (Page 35 lines 16-24; 1-6 of Ervin deposition)

Q.  Did you see any of the occupants come off the bus at any time?

A.  Just the four guys outside having a cigarette.

Q.  That was it?  Nobody else?

A.  Nobody else came off the bus.

Q.  Did you see either of the two guys attempt to come into the bus?

A.    No.

Q.    No one came in the bus?

A.    No.

Q.    You didn't see the young man that we referred to which is Charles Conroy, get hit?

A.    No.

Q.    You only saw him when he was spitting blood?

A.    Yes.

Beginning on the bottom of page 37 through line 10 of page 38 of Ervin's deposition transcript, the following testimony ensued:

Q.    So if Charles Conroy came in today and said that he climbed the front steps of the bus and looked into the bus?  You didn't see that happen?

A.    No.

Q.    When Charles Conroy came in to testify today and he said that he had seen plastic cups, which he thought contained beer, there was no beer on the bus?

A.    No.

Q.    No cans on the bus?

A.    No.

Q.    No bottles on the bus?

A.    No.

Q.    No keg on the bus?

A.    No.

Q.    When Mr. Conroy testified earlier that there were certain white males who came off the bus and struck him repeatedly that wouldn't be correct, would it?

A.   Like I said I didn't see it.

Finally, on page 40 of the transcript lines 6-18, Ervin states:

A.   Yeah, because, like I said, I just stayed by the door to make sure nobody else got off, you know to make sure nobody gets on.

Q.   Okay that's your job?

A.   Yes.

Q.   Your job is to stay with the vehicle at all times; correct?

A.   Yes.

Q.   But when Mr. Conroy, the plaintiff in the case, came in and testified that he didn't see the bus driver anywhere near the bus at the time this incidence occurred he would not be telling the truth?

A.   Yes.

From the plaintiff's perspective, the testimony of the owner of the defendant companies as to his not knowing or not being aware of the existence of a regulation or law in place that prohibits people from drinking in limousines or buses while being operated is significant. That significance is heightened by the expert report of Elizabeth A. Trendowski on behalf of the plaintiff who states, without equivocation, that such conduct is prohibited. (See page 3 of report of Trendowski referring to New Jersey Alcohol Beverage Control).

As to the existence of alcohol on the bus that evening, plaintiff avers that one only has to look closely at the statements offered under oath by two of the occupants, Janine Castellucci and Nick Ryan. Ms. Castellucci, for whom the bus was rented, confirmed the presence of alcohol on the bus that evening, specifically a keg of beer with a tap on it. (Page 14, lines 16-20 Castellucci statement) and the beer having been ingested through the use of plastic, red cups. Nick Ryan,

who was Janine Castellucci's boyfriend at the time, remembered drinking beer and that beer had been brought on the bus that evening. (Page 6 lines 6-8)  Further, due to Ryan recalling drinking out of cups, the beer, he opined,  would have probably come from a keg.  (Page 6, lines 20-22, Ryan statement)

When asked if he recalled certain specifics from the bus itself that evening, Ryan responded as follows: (Page 10, lines 3-11 and Page 12, lines 8-11)

Q.	Are you able to recall anything in particular?

A.	I think it was like, the wrap-around like, leather...it's hard for me because at that point, everybody turned 21 at the same time.

Q.	Right.

A.	And that was the thing to do.

Q.	Of course.

A.	You got a limo/bus, you ride to Philly, you drank a lot.

Q.	Do you know how many bars you may have been to that evening roughly?

A.	I think a lot.  Probably, five six different ones.

It is against this backdrop or collage of facts, as gleaned by the plaintiff from certain of the discovery, that a claim of negligence is asserted against the defendants.

**III.	ISSUE**

Whether plaintiff has made out the elements of negligence, to a prima facie degree, in conjunction with the existence of genuine issues of material fact to preclude the entry of summary judgment.

Answer:  Yes.

## IV.    **DISCUSSION/ARGUMENT**

To have a chance to obtain summary judgment, the movant must first successfully shoulder the burden of establishing its presumptive entitlement to summary judgment in the absence of an adequate response by the nonmovant.  In effect, the movant must make out a prima facie case for summary judgment in its favor by establishing (1) the apparent absence of any genuine issue of material fact and (2) movant's entitlement to judgment as a matter of law on the basis of the undisputed facts.  Moore's Federal Practice 3D §56.13(1).

If the movant fails to meet its burden of production to show that there exists no genuine issue of material fact, the motion for summary judgment may not be granted.  Celotex Corp v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986).

Courts ruling on summary judgment motions are to review the submissions of the parties and determine whether a factual dispute of sufficient magnitude exists to warrant trial.  Anderson v. Liberty Lobby, Inc.  477 U.S. 242, 106 S. Ct. 2505 (1986).

Court must view record in light most favorable to nonmovant.  Anderson at P. _____ ("evidence of nonmovant is to be believed and all reasonable inferences are to be drawn in his favor").

Assuming that this court recognizes plaintiff's position as to the existence of multiple genuine issues of material fact, the issue as to whether plaintiff's claim fails as a matter of law need now be addressed.

The elements of a cause of action for negligence are well known and not in dispute.  A prima facie case of negligence requires a plaintiff to prove four elements:

(1)    a duty or obligation recognized at law;

(2)    breach of that duty by the defendant;

(3)     a causal connection between the defendant's breach of that duty and the resulting injury; and

(4)     actual loss or damage suffered by the complainant  <u>Reilly v. Turgartes, Inc</u>. 633 A.2d 208 (Pa. Super 1993).

Focusing initially on whether a duty should be imposed on the defendants, we need to look what a duty actually is.  As defined by W. Page Keeton, a duty is an obligation requiring the person to conform to a standard of conduct for the protection of others against unreasonable risks.  <u>Prosser and Keeton on Torts</u>, 5th Edition §30.

This standard of conduct is defined as the "reasonable man of ordinary prudence."

The idea of risk in this context necessarily involves a recognizable danger, based upon some knowledge of the existing facts and some reasonable belief that harm may follow. Restatement (Second) of Torts, §282, comment <i>g:</i> <u>Prosser and Keeton on Torts</u>, 5th Ed. §31.

In the instant circumstance if we are to believe the testimony of Charles Conroy, William Ervin the bus driver at the time when the bus broke down was not present.  To leave the bus at that time unsupervised with a group of 21 year olds who had been drinking creates an unreasonable risk of harm to themselves or others.  This assertion is corroborated by Elizabeth A. Trendowski who states on page 4 of her report that "once the bus became disabled, JBJ was responsible for controlling the people within the vehicle.  JBJ had a duty to maintain the safety of the passengers and of third parties.  This was the equivalent of a bar full of intoxicated patrons." Ms. Trendowski goes on to state "a reasonably attentive driver would have noticed that several of the passengers were likely intoxicated and created a hazard to themselves and to third parties. Once the JBJ driver left the vicinity of the bus, he relinquished control of the environment.  A private carrier like JBJ transporting intoxicated persons can reasonably foresee that the

passengers may not be fully capable of making rational decisions in certain situations like the incident that occurred on November 26, 2006 at 3:15 a.m." Lance Watt also serving as an expert on behalf of the plaintiff, opined that "Ervin improperly maintained control over his passengers who were his responsibility and under his direct supervision at the time of the assault." (§5, page 6 of the Investigation of the Charles Conroy Assault by Lance Watt)

Plaintiff rebuts the application of §315 of the Restatement Second of Torts due to its non-application to this set of facts. The focus is not on the duty to control the conduct of a third person. The duty is to conduct oneself as a reasonable man of ordinary prudence would in like circumstances so as not to create a situation involving unreasonable risks to others. The analysis focuses on the actor William Ervin whose duty is to conform his conduct to that of the reasonably prudent person under the circumstances existent that evening. It is plaintiff's assertion such conduct would not allow young, intoxicated or near-intoxicated patrons to be unsupervised in an urban environment at a late hour thereby creating potential risks of harm to one another or third parties.

That criminal conduct (the assault itself), identified as a superseding or intervening cause, absolves the defendants of their duty of care, is contravened by William L. Prosser. Prosser states "if the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant had reason to anticipate under the particular circumstances, the defendant may be negligent, among other reasons because of failing to guard against it; or the defendant may be negligent only for that reason." Prosser and Keeton on Torts, Fifth Edition §44

The instant scenario is not representative of the defendants maintaining an affirmative duty to *control* the conduct of third persons, it is about the defendants exercising appropriate

conduct, through its bus driver that evening, in a situation where unreasonable risks existed. That plaintiff is unable to offer substantive evidence as to the existence of minors on the bus is of no moment.  Further, it is of no moment that the defendants did not serve the alcohol which was ingested on the bus that night.  It is foreseeable that patrons renting a bus for the purpose of bar-hopping, during which time the patrons are drinking from a keg of beer while the bus is being driven, which bus becomes disabled and then left unsupervised in an urban setting at 3:00 a.m. - that harm against individuals or property could ensue.  On a parallel scale, it is the kind of unreasonable risk  which is created if the manager or supervisor of a bar leaves their bar unattended to the intoxicated or near-intoxicated patrons.

Paragraph 15 of plaintiff's complaint states that "defendants breached their duty of care owed to the plaintiff by allowing and/or inviting the consumption of excessive amounts of alcohol, by minor occupants and those having just turned 21 years of age and thereafter allowing the limousine/van and its occupancy to be left unattended for a period of time."  For defendants to assert that plaintiff has not satisfied the element of the breach of the duty of care, even at a prima facie level, contravenes the facts which exist.

Janene Castellucci in her statement under oath recalled a quarter keg of beer with a tap being on the bus at the time it left her home.  She also recalls with specificity that red, plastic cups were used to drink the beer.  Nick Ryan, her boyfriend at the time, was certain that beer was being consumed on the bus and that the patrons had been to at least six or seven bars at the time they were retrieved at the end of the evening.  The testimony of the bus driver as to the non-existence of beer is simply not credible, or if credible, when weighed against the testimony of Ryan and Castellucci, reflects his complete inattentiveness to his surroundings.  Further, for the bus driver to claim that he was within 3 feet of the front door and that no one entered the bus

after it was broken down contravenes not only the plaintiff's testimony but that of Castellucci and Ryan (both of whom recalled an unknown individual having entered the bus).  Further, for the bus driver to remember so little about the incident which arose that evening <u>confirms</u> his continuing non-attention to his surroundings or his evasiveness of the truth.  By allowing intoxicated, or near-intoxicated patrons, within this age bracket to be unmonitored or unsupervised in an urban  setting at that time of morning/night portends harm either to them or to others.

Plaintiff now turns to the issue raised as to whether plaintiff has proven, at a prima facie level, that his injuries were a proximate cause of the defendants' breach of duty.

Proximate causation requires an evaluation not only of the foreseeability of consequences but also whether, as a matter of law, legal responsibility should attach to such consequences.  The question of proximate cause centers on whether the harm caused to the specific plaintiff in the case was a foreseeable result to the risk which makes the defendants' conduct unreasonable. <u>Berry v. The Borough of Sugar Notch</u>, 43 A. 240 (Pa. 1899).

The test for proximate causation is whether the defendants' acts or omissions were a "substantial factor" in bringing about the plaintiff's harm.  <u>Brown v. Philadelphia College of Osteopathic Medicine</u>, 760 A.2d 863 (Pa. Super. 2000).

Under this test, plaintiff must establish that the nexus between the wrongful acts (or omissions) and the injuries sustained is of such a nature that it is socially and economically desirable to hold the wrongdoer liable.  <u>Hamil v. Bashline</u>, 392 A.2d 1280 (Pa. 1978).

The court must determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of.  <u>Reilly v. Tiergarten, Inc.</u>, 633 A.2d 208 (Pa. Super. 1993).

In attempting to satisfy this issue of proximate causation, plaintiff offers the findings of its experts both of whom address this issue in the Findings section of their investigations/reports. Plaintiff believes that the facts, as presented, led to the creation of "a causal chain of events which were <u>not</u> so remote to make it seem highly extraordinary that defendants' conduct could have caused the harm. <u>Miller v. The Brass Rail Tavern, Inc</u>. 702 A.2d 1072 (Pa. Super. 1997) Defendants' assertion that none of the patrons on the bus were involved in the assault and therefore causation is lacking, presents itself, at worst, as a genuine issue of material fact which should be determined by a fact finder.

That defendants take exception and request the elimination of plaintiff's proposed experts is a matter for another moment. At this juncture plaintiff has proffered the analyses and findings from two experts, which plaintiff avers, support his construction of negligence. What weight the analysis and findings of plaintiff's experts will be accorded is to be determined by the fact finder. Defendants may rightfully object to the analysis and findings but their existence and relevance at this time points to genuine issues of material fact yet to be resolved.

Defendants' bald assertion, in support of their defense of plaintiff's assumption of the risk, that plaintiff walked on the bus and thereafter "provoked an altercation" is both misguided and without foundation. Should defendants wish to raise the doctrine of the assumption of the risk from the facts borne out, then a fact finder would be in the best position to determine if plaintiff's flicking of a cup containing a certain amount of liquid constituted sufficient provocation to put himself at risk. Further, defendants' interpretation of the assault perpetrated upon plaintiff as "engaging in a physical altercation with unknown assailants" is both a complete misinterpretation of the facts and a misstatement of plaintiff's testimony. There is no unrebutted testimony from

which this court can determine, as a matter of law, that the plaintiff assumed the risk of his own

conduct.

## V.   <u>CONCLUSION</u>

In light of plaintiff at this time satisfying the elements of his negligence claim, to a prima

facie degree, in conjunction with the existence of (multiple) genuine issues of material fact,

defendants' request for summary judgment should be denied.

Respectfully submitted.


By:_____

James N. Gross, Esquire
Attorney I.D. # 40715
Attorney for Plaintiff
1616 Walnut Street, Suite 1110
Philadelphia, PA 19103
(215) 670-9926

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES CONROY** | : | **CIVIL ACTION NO. 09-cv-01215** |
| | : | |
| **v.** | : | |
| | : | |
| **JBJ LIMOUSINE, INC.** | : | |
| **t/a JBJ LIMOUSINE and** | : | |
| **JBJ LIMOUSINE AND BUS, INC.** | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, James N. Gross, Esquire, do hereby certify that on this 16th day of November, 2009, a true and correct copy of the Plaintiff's Response to Defendants' Motion for Summary Judgment was served electronically on the following individuals:

Robert D. MacMahon, Esquire
Syreeta Peake, Esquire
Weber, Gallagher, et al.
2000 Market Street, 13th Floor
Philadelphia, PA 19103

By: _____
James N. Gross, Esquire
Attorney for Plaintiff, Charles Conroy