IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES CONROY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JBJ LIMOUSINE, INC. t/a | : | |
| JBJ LIMOUSINE and | : | |
| JBJ LIMOUSINE AND BUS, INC. | : | NO. 09-1215 |

ORDER AND OPINION

JACOB P. HART                                                                    DATE:   November 24, 2009
UNITED STATES MAGISTRATE JUDGE

This action arises out of an incident where several passengers on a bus rented from Defendants JBJ Limousine, Inc. and JBJ Limousine and Bus, Inc., (collectively, "JBJ"), struck plaintiff Charles Conroy. Conroy has sued JBJ in negligence. JBJ has moved for summary judgment. JBJ's motion for summary judgment will be granted, because Conroy has not demonstrated that JBJ owed a duty to him.

I.    Factual and Procedural Background

On the night of November 26, 2006, Janene Castellucci, who was celebrating her 21st birthday, and ten or fifteen of her friends and relatives, rode in a bus hired by her mother from JBJ to Old City in Philadelphia to patronize the bars there. Oral Testimony of Janene Castellucci, attached as Exhibit B to JBJ's Motion, at 9-15. This was a common way for people in their social circle to celebrate a 21st birthday: "You got a limo/bus, you ride to Philly, you drank a lot." Oral Testimony of Nick Ryan, attached as Exhibit C to JBJ's Motion, at 10.

While driving in from New Jersey, the bus passengers drank beer in red plastic cups, drawn from a quarter-keg brought on the bus at Ms. Castellucci's house. Testimony of Janene Castellucci, at 24, 34-35; Testimony of Nick Ryan, at 6, 19.

When the party reached Old City, they parted company with the bus and its driver, William Ervin. Testimony of Janene Castellucci at 17, 23-24; Testimony of William Ervin, attached as Exhibit D to JBJ's Motion, at 32-33. The bus picked the party up again around 2:00 a.m. Testimony of Nick Ryan at 18; Testimony of William Ervin at 32. Unfortunately, the bus broke down almost immediately, at Third and Market Streets. Testimony of Janene Castellucci, at 18; Testimony of Nick Ryan at 12; Testimony of William Ervin at 33-34.

As the bus sat immobilized on the side of Market Street, plaintiff Conroy, and two friends were walking up the street after visiting several bars. Deposition Testimony of Charles Conroy, attached as Exhibit E to JBJ's Motion, at 45, 54. Conroy had drunk three or four beers in about three and a half hours, but testified at his deposition that he was feeling only slight effects from this. Id. at 51, 59.

According to Conroy, he saw the bus with its door open, no driver, and no people standing outside it. Id. at 54-56. He became curious, and walked onto the bus. Id. at 56. Once on the bus, he saw approximately 12-15 individuals, and said something to the effect of: "Hey what's up? How you guys doing?" Id. at 57-58. A white male who was on the bus responded: "Get the fuck off." Id. at 61.

Conroy then turned to leave the bus. Id. Before he left, however, he turned to a table loaded with plastic cups, and "knocked over" one of the cups that had "just a little tiny bit of beer in it." Id. at 62.

Conroy stepped off of the bus, but, as he testified, six or seven men came out of the bus and surrounded him and one of his friends, Nick Loberto. Id. at 71-72. Loberto tried to reason with the men. Id. at 72. However, Conroy was struck by three or four men as he tried to run

2

away up Market Street.  Id. at 73-76.  Conroy has alleged that he sustained fractures to his face, including injuries to his nose and right ocular region.  Complaint, attached as Exhibit A to JBJ's Motion.

Police arrived at the scene, and examined the hands of all the male bus passengers.  Testimony of Nick Ryan at 13-15.  The police incident report gives the names of Nicholas Curiale and Jason Williams as two suspects.  Testimony of Charles Conroy at 88.  Conroy never pressed criminal charges against Curiale or Williams, or anyone else, in connection with the incident.  Id. at 88-91.  They are not named as defendants in this action.

II.     Legal Standards

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pr. 56.  The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp.. v. Catrett, 477 U.S. 317, 323 (1986).  In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, supra at 325; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party.  Anderson v. Liberty Lobby, supra at 255;  Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358 , 361 (3d Cir. 1987).  Nevertheless, Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett at 323.

III.   Discussion

There is little question that the individuals Conroy encountered on the night of the incident had been drinking, and that they behaved loutishly. However, this is not the central issue in this case, where only the bus company is a defendant. Under Pennsylvania law, a cause of action in negligence is proved by showing that the plaintiff was owed a duty of care by the defendant; that the defendant breached this duty; and that the breach resulted in injury with actual loss. McCandless v. Edwards, 908 A.2d 900 (Pa. Super. 2006). Here, Conroy cannot show that JBJ owed him a duty of care.

Generally, there is no duty to control the acts of a third party unless a defendant stands in a "special relationship" with either the third party whose conduct needs to be controlled (here, the bus passengers) or the victim of such conduct (Conroy). Brisbine v. Outside In School of Experiential Education, Inc., 799 A.2d 89, 93 (Pa. Super. 2002), citing Brezenski v. World Truck Transfer, 755 A.2d 36, 40 (Pa. Super. 2000), and *accord* Restatement of Torts (Second), Title A, Duty to Control Conduct of Third Persons § 315, General Principle.

In Evanko v. Management & Training Corp., 546 F. Supp.2d 188 (M.D. Pa. 2008), the District Court for the Middle District of Pennsylvania looked to Brisbine, supra, in deciding that, in Pennsylvania, a special relationship is limited to one of those found in § § 316-319 of the Restatement (Second) of Torts. 546 F. Supp.2d at 192, citing Brisbine at 799 A.2d at 93. These are: (a) a parent's duty to control a child ( § 316); (b) a master's duty to control a servant ( § 317); (c) a possessor of land's duty to control a licensee ( § 318); and (d) the duty of those in charge of individuals with "dangerous propensities" to control the individuals ( § 319). Id.

Thus, the only way JBJ could be found to have a duty to Conroy under Pennsylvania law is if it could be found to have been in charge of a person with dangerous propensities, under

4

Restatement § 319. This section provides that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement at § 319, as quoted in Evanko at 192.

The notes to § 319 explain:

> The first situation involves an actor who "has charge of one or more of a class of persons to whom the tendency to act injuriously is normal." Restatement (Second) of Torts, § 319, comment a. The second situation occurs when an actor has charge of a person who has a "peculiar tendency" to act injuriously "of which the actor from personal experience or otherwise knows or should know." Id.

Evanko, at 192, quoting Brisbine at 799 A.2d 93.

Although intoxicated people may behave erratically, it is not plausible that they would be characterized as a class of persons to whom it is normal to cause bodily harm to others, in the same sense as the homicidal mental patient in Emerich v. Phila. Center for Human Development, 720 A.2d 1032 (Pa. 1998), where a therapist was held to owe a duty to a plaintiff whom the third-party patient had specifically identified as an intended victim.[1]

Indeed, Pennsylvania courts have not been eager to extend the scope of liability for the actions of a third party beyond Emerich. See McCandless v. Edwards, supra (no duty owed by a medical center to an individual who died after using methadone purchased illegally from one who stole the methadone from a patient treated by the medical center); F.D.P. v. Ferrara, 804 A.2d 1221 (Pa. Super. 2002) (no duty toward the victim on the part of the operator of a group

---

[1] Nor is there a basis for JBJ's liability to Conroy under law specific to the serving of alcoholic beverages. Pennsylvania law recognizes a duty only on the part of holders of liquor licenses, and social hosts who knowingly serve minors. Burkhart v. Brockway Glass Co., 507 A.2d 844 (Pa. Super. 1986); Klein v. Raysinger, 470 A.2d 507 (Pa. 1983). JBJ, a chauffeur of persons consuming alcohol which they purchased themselves (and who have not been shown to be minors), does not fit either of these categories.

home for the mentally disabled, where the third person was a resident who was a known child molester, and who sexually assaulted a minor on a home visit); Dunkle v. Food Service East, Inc., 582 A.2d 1342 (Pa. Super. 1990) (no duty owed by a mental health provider toward the murder victim of a mental patient who did not specifically identify his intended victim); see also Evanko, supra (finding no duty toward a third party on the part of an operator of a residential job training facility for teens).

In Ferrara, supra, the Pennsylvania Court of Appeals considered the following factors in deciding not to impose upon a methadone clinic a duty to protect third parties: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution. 804 A.2d at 1231; citing Brisbine. These factors were also used in McCandless, supra, at 904. Of these, the most important factor to consider is social policy. McCandless, id.

Here, the Ferrara factors weigh against imposing a duty on JBJ. All the facts indicate that the relationship between JBJ and the third parties at issue was anticipated to be nothing more than driver/passenger. JBJ never undertook to bring its passengers from bar to bar, much less to monitor their drinking or their conduct.

Moreover, the foreseeability that young, barhopping males would end up assaulting a passerby is more than zero, but it is certainly not as great as the danger presented by a mental patient who has expressed homicidal plans. This is especially true in a case such as this where all evidence indicates that JBJ's passengers were sitting quietly until Conroy entered the bus and intentionally tipped over a cup.

Most importantly, although JBJ is a for-profit business, unlike a mental health center or a methadone clinic, there is a considerable public utility to its acting as a chauffeur to drinking parties. This service reduces the danger to the public, as well as to its own passengers, from drunken driving. Imposing a duty upon a bus company to monitor the criminal conduct of its passengers would harm the public interest, in that it would discourage bus companies like JBJ from offering such services – thus, making it more difficult for bar patrons to find a safe ride home, and putting drunk drivers on the streets.[2]

Conroy argues that the law regarding a duty towards a third person is inapplicable here: "The instant scenario is not representative of the defendants maintaining an affirmative duty to *control* the conduct of third persons, it is about the defendants exercising appropriate conduct, through its [*sic* "their"] bus driver that evening, in a situation where unreasonable risks existed." However, this argument simply ignores the fact that the general rule regarding duty is, in Pennsylvania, modified by the rule that a person ordinarily has no duty to protect an individual from the act of a third-party. See Brisbine, supra, and the other cases cited above.

Further, it is pointless to maintain that this case is not about "defendants maintaining an affirmative duty to control the conduct of third persons" when Conroy's entire case is based on the theory that JBJ's agent – the bus driver – should have acted to prevent the fists of the third-party passengers from contacting Conroy's face.

Finally, I have deliberately declined to rule upon the value of the plaintiffs' expert testimony. Nevertheless, I will note that the experts have not shown that JBJ breached

---

[2]Conceivably, my conclusion would be different if the negligence of which JBJ is accused was closely related to its limited role as a limousine service, such as if, for example, a JBJ driver let a drunken passenger drive the bus, resulting in harm to a plaintiff.

7

a duty imposed by law. The statutes cited by expert Elizabeth Trendowski are clearly irrelevant to this case. NJ Statute 39:4-51a, which prohibits the drinking of alcoholic beverage by a passenger in a motor vehicle specifically states that it "shall not apply to a passenger of a charter or special bus ... or a limousine service." NJ Statute 33:1-12, also cited by Ms. Trendowski, applies only to holders of Class C Beverage Licenses.

IV. Conclusion

For the reasons set forth above, I now enter the following: